UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANDREA SEALEY,

        Plaintiff,

v.

        **DECISION AND ORDER**
        11-CV-489S

AFFILIATED COMPUTER SERVICES, INC.,
COLLEEN MAHONEY, TOM SALADA, TOM
WRINN, STEPHANIE OREFICE, DONNA
BARLOW, and MIKE GIBAS,

        Defendants.

        1.    *Pro Se* Plaintiff, Andrea Sealey, brings this action alleging that her former employer, Affiliated Computer Services, Inc. ("ACS"), and several of its employees violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.* ("Title VII"). In addition to her Title VII claims, Sealey brings claims styled as: (1) obstruction of a criminal investigation; (2) retaliation against a witness, victim, or informant; (3) civil disorders; (4) conspiracy against rights; (5) deprivation of rights under color of law; (6) deprivation of relief benefits; (7) damage to religious property, obstructing persons in the free exercise of religious beliefs; (8) scheme or artifice to defraud; (9) attempt and conspiracy; (10) torture; intent to inflict severe mental pain or suffering upon another person within his or her custody or physical control; and (11) interception and disclosure of wire, oral, or electronic communications. (Complaint, p. 6; Docket No. 1.) Presently before this Court are ACS's and Colleen Mahoney's motions to dismiss (Docket No. 6) and

to strike[1] (Docket No. 33), and Sealey's motion seeking recusal (Docket No. 14). For the following reasons, Defendants' motion to dismiss is granted, their motion to strike is denied as moot, and Plaintiff's motion for recusal is denied.[2]

2. Cognizant of the distinct disadvantage that *pro se* litigants face, this Court has read Sealey's submissions carefully and liberally, and has interpreted them to raise the strongest arguments that they suggest. See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

3. Initially, this Court must address Sealey's motion for recusal. In support of her motion Sealey provides no facts or relevant argument. It consists largely of extraneous information and simply asks this Court that *if* it has a bias to recuse itself. (See Plaintiff's "Recusal Letter"; Docket No. 14.) But despite Sealey's hypothetical concerns, this Court remains impartial. Because there is no question that an objective, disinterested observer fully informed of the underlying facts, would [not] entertain significant doubt that justice would be done absent recusal, see United States v. Carlton, 534 F.3d 97, 100 (2d Cir. 2008) (internal citations and quotation marks omitted), and because this Court's impartiality has not "*reasonably* been questioned," Sealey's motion is denied. See 28 U.S.C. § 455(a) (emphasis added).

4. Substantively, Sealey contends that she was discriminated against by her former employer and her former co-workers at ACS. On her complaint form, she checked

---

[1] This motion is in response to the voluminous, largely irrelevant and obscure exhibits Sealey has filed. See, e.g., Plaintiff's "Exhibit 145," an email about a gospel concert she planned to attend. (Docket No. 40-9.) Because this Court will grant Defendants' motion to dismiss, it need not address the motion to strike.

[2] This Court has considered Plaintiff's contention that she was improperly served with the motion to dismiss and has deemed her argument without merit.

boxes alleging that her rights under Title VII were violated because of her race, sex, religion, and that she was sexually harassed. Supporting these claims, she alleges a desultory and bizarre set of facts, set forth below.[3]

5.      Although she never indicates when she was hired, it is clear that she was released on November 3, 2009. (Complaint, ¶ 20; Docket No. 1.) Sealey contends she was released as a result of a complaint that she lodged against her supervisor, Donna Barlow. (Id.) Her complaint, in turn, was the result of a "false write-up," or reprimand, composed by Barlow that she believes she did not deserve, and which contained "no specifics of anything [she] did wrong." (Id.) She also contends that she was retaliated against because she "was making complaints everyday to [the] New York State Attorney General Office and the United States Department of Justice due to a conspiracy to harass me that Affiliated Computer Services participated and played a leading role [in]." (Id., ¶ 21.) Sealey further believes that her race played a factor in Barlow's decision to issue the write-up. In an effort to support this claim, Sealey alleges that when she asked Barlow what she did wrong, Barlow stated that "during a break when the Caucasian trainer Stefanie [sic] Orefice was making a subtle joke calling me a stupid male[,] I responded with a joke." (Id., ¶ 22.)

6.      At this point, the complaint takes a disturbing and more puzzling turn. Alluded to above, it appears that Sealey believes that ACS and her co-workers were involved in a conspiracy to harass her. In perpetrating this conspiracy, Sealey alleges that Defendants consistently directed "disgusting tongue, hole, and finger demonstrations" at

---

[3] Facts are taken from Sealey's complaint. For the purposes of resolving the motion to dismiss, those facts must be accepted as true. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

her. (Id., ¶ 23.)  Sealey then goes on to explain these "demonstrations," revealing an elaborate system that she has created to assign meaning to otherwise innocuous hand gestures, body parts, and colors. She states, "I am sure and believe [these are] the appropriate definition[s] of hand, finger, tongue, and hole demonstrations. This has never been admitted, but it was done to me every day." (Id., ¶ 23a.)  A sampling of this system:

- "The get one finger demonstration with index finger means] that I get in a claim for damages of one stranger child." (Id., ¶ 23d.)
- "The see ya and hand signals mean a desire to false imprison or a desire to jail." (Id., ¶ 23f.)
- "The ring finger means a teenaged child." (Id., ¶ 23h.)
- "The little or baby finger means a baby or child up to twelve years." (Id., ¶ 23i.)
- "The hand going sideways means justice will go either way." (Id., ¶ 23l.)
- "The color pink means heterosexual woman with love for males." (Id., ¶ 23p.)
- "The dark blue color mean[s] a straight gay woman with deep love for another woman. It also means a woman or male thinks like a male." (Id., ¶ 23v.)
- "The buttocks or ass means the jurisdiction of Niagara County." (Id., ¶ 23mm.)

7.  It appears Sealey believes that these "tongue, hole, and finger demonstrations" – she defines 43 such "demonstrations" in total – and other "jokes behind her back" accusing her of being gay or bisexual created a hostile work environment. Defendants move to dismiss her complaint under Fed. R. Civ. P. 12(b)(6).

8.  Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6).  Federal pleading standards

are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8 (a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

9. When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

10. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 1945 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 129 S. Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950; Fed. R. Civ. P. 8 (a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

11. Title VII makes it unlawful to "fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(l). Accordingly, the "*sine qua non* of a . . . discriminatory action claim under Title VII is that the discrimination must be because" of the employee's protected characteristic. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007).

12. This requirement proves fatal to Sealey's Title VII claim because the complaint is devoid of any allegation connecting her discharge to discrimination based on a protected characteristic. Sealey alleges that she was the victim of a far-flung conspiracy, but, even under the most liberal construction of her allegations, she provides no facts that could possibly connect any adverse employment action to a protected status.

13. The facts supporting her allegation that she was fired because of her race are, at best, inadequate. As far as this Court can tell, construing the claim liberally, she bases her claim on that fact that she was interacting with a white woman when she was written up. This plainly does not allege the necessary causation to support a Title VII claim. See Johnson v. City of New York, 669 F. Supp. 2d 444, 450 (S.D.N.Y. 2009) (finding in a 42 U.S.C. § 1981 context that "the mere fact that plaintiff and defendants are of different races, standing alone, is simply insufficient as a factual pleading to allege racially motivated discrimination"); see also Pilgrim v. McGraw–Hill Cos., 599 F. Supp. 2d 462, 468 (S.D.N.Y. 2009) ("[T]he standard for all Title VII, Section 1981, [and New York State Human Rights Law] . . . employment discrimination claims is the same.").

14. Further, she does not allege that she was discriminated against because of her religion or her gender. The only role her religion plays in the complaint is to emphasize the degree of embarrassment she suffered when others allegedly joked about

6

her sexuality. For example, she states, "I . . . am a minister of God and practicing born again Christian or around 20 years. I never have personal association with gays or bisexuals . . . the degrading rumors that staff circulated among themselves that I was gay, bisexual . . . damaged my reputation and was a hindrance to my Christian business." (Complaint, ¶¶ 44, 45.) But such allegations do not state a claim under Title VII for discrimination based on religion or sex. See Patane, 508 F.3d at 112; see also Dawson v. Bumble & Bumble, 398 F.3d 211, 217 (2d Cir. 2005) (finding the "law [] well-settled in this circuit [that] . . . Title VII does not prohibit harassment or discrimination because of sexual orientation."); Spearman v. Ford Motor Co., 231 F.3d 1080, 1087 (7th Cir. 2002) (discrimination based on perceived sexual orientation not actionable). For those reasons, any claim for discrimination based on race, religion, or gender is dismissed for failure to state a claim upon which relief can be granted. See Iqbal, 129 S. Ct. at 1953 ("Our decision in Twombly expounded the pleading standard for all civil actions, and it applies to antitrust and discrimination suits alike.").

15.     These reasons also support a finding that Sealey has failed to state a hostile work environment or retaliation claim under Title VII. To sustain either of these claims, Sealey must allege some connection between her status as a member of a protected class and a hostile work environment or a retaliatory act. See Woodworth v. Shinseki, 447 Fed. Appx. 255, 257 n. 12 (2d Cir. 2011) ("As the District Court shrewdly observed, 'Title VII only protects an employee from retaliation for engaging in a protected activity . . . which relates to discrimination on the basis of race, color, religion, sex or national origin.'") (summary order; internal citation omitted); Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (finding it "axiomatic" that to establish a hostile work environment

under Title VII, a plaintiff must demonstrate that the conduct occurred because of her protected status).

16. It is clear that Sealey believes that the continuous "finger, hole, and tongue demonstrations" created a hostile work environment, but even assuming these allegations are true, she fails to connect this hostility to a protected status. In fact, she removes any doubt in this matter herself by alleging that this "hostility" was the result of "reporting a child abuse case many years prior." (Complaint, ¶ 29.)

17. Sealey also contends that the work environment was hostile because "people would walk by my desk and make subtle jokes calling me gay" even though she is the "most dignified heterosexual" person anyone will meet. (Complaint, ¶ 28.) But, as discussed above, this allegation also fails to state a Title VII claim. See Bumble & Bumble, 398 F.3d at 217; Spearman, 231 F.3d at 1087.

18. To the extent that Sealey alleges that Defendants violated Title VII by ridiculing her as being a male, this claim must also fail. While sex stereotyping by an employer based on a person's non-conforming gender behavior may be impermissible discrimination, see Bumble & Bumble, 398 F.3d at 220-23, Sealey has alleged insufficient facts from which this Court could make a determination that she was discriminated against on this basis. See Simonton v. Runyon, 232 F.3d 33, 38 (2d Cir. 2000) ("We do not have sufficient allegations before us to decide [plaintiff's] claims based on stereotyping because we have no basis in the record to surmise that [plaintiff] behaved in a stereotypically feminine manner and that the harassment he endured was, in fact, based on his non-conformity with gender norms."). In the only relevant allegations on this cause of action, Sealey claims that her co-workers would call her a man. But as the Simonton court

found, Sealey has not pled that she behaved in a stereotypically masculine manner, and has therefore failed to state a claim that she was discriminated on that basis.

19.     Moreover, Title VII is not a "general civility code." See Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84, 141 L. Ed. 2d 662 (1988). Therefore, casual comments, rude or derogatory remarks, and conduct motivated by personal animosity or personal feud cannot support a hostile work environment claim. See Memisevich, 2006 WL 2277964, at *8; Norris v. N.Y.C. Hous. Auth., No. 02 Civ. 6933, 2004 WL 1087600, at *12 (S.D.N.Y. May 14, 2004); Neratko v. Frank, 31 F. Supp. 2d 270, 284 (W.D.N.Y. 1998). Sealey has not alleged sufficiently severe conduct, whether considered collectively or independently, to warrant Title VII relief. As such, the claim must be dismissed.

20.     It also is clear that Sealey believes that she was discharged because she filed a complaint against her supervisor. But neither that complaint nor the earlier "child abuse complaint" were related to a Title VII protected activity.[4] As set forth above, Title VII only protects an employee from retaliation for engaging in a protected activity which relates to discrimination on the basis of race, color, religion, sex or national origin. See 42 U.S.C. § § 2000e–2 (a), 2000e–3 (a); Woodworth v. Shinseki, No. 10-CV-6630, 2011 WL 2174347, at *2 (W.D.N.Y. June 2, 2011); Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) ("Title VII makes an employer liable for discriminating against its employees based on race or gender, or for retaliating against an employee for having challenged such discrimination."). But by its very nature a child abuse complaint does not

---

[4]Sealey provides no specifics about the child abuse complaint beyond claiming that it instigated the conspiracy against her.

9

concern discrimination based on race, religion, color, sex, or national origin. Nor does her complaint about her supervisor, which charged, "it is against policy to attempt to give a write-up that does not state any specifics," allege such discrimination. (See Sealey's Complaint Letter dated 10/21/09, to Colleen Mahoney, attached to the Complaint; p. 24.[5]) Nowhere in that complaint, which appears to take issue with the fact she was reprimanded for joking or laughing while at work,[6] does she complain about mistreatment due to her race, religion, color, sex, or national origin. She has accordingly failed to plead an essential element of a Title VII claim and dismissal is therefore warranted.

21. Finally, the remainder of Sealey's claims sound in Title 18 of the United States Code, which contains criminal and criminal procedure statutes. As such, they are inapplicable to this civil action and those claims are dismissed.[7]

22. Although only ACS and Colleen Mahoney have moved to dismiss, having found that Sealey has failed to state any cognizable claim, and because it is well-settled that Title VII does not impose liability on individual defendants, see Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000), this Court will dismiss the complaint, *sua sponte,* as to

---

[5] The letter is not paginated. Page numbers refer to the docketed page number.

[6] "Everyone in the class room does these things," she complains, "often in a joking way and I never or rarely [do] but this was targeting me unfairly. It is similar to telling me to have fun but not to laugh at the jokes and that is not fair." (Complaint letter; Docketed at p. 25.) In the letter, she also raises her concerns about the "demonstrations" that she believes were aimed at her. But as noted above, these too are disconnected from any Title-VII protected activity.

[7] Even if her "scheme or artifice to defraud" claim were construed as a civil fraud claim, it would fail as matter of law because she has not alleged sufficient facts supporting the claim. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

the non-moving defendants.[8] See, e.g., Hooda v. Brookhaven Nat'l Lab., 659 F. Supp. 2d 382, 390 (E.D.N.Y. 2009) (dismissing, *sua sponte*, Title VII claims against individual defendants); Richardson v. Sec. Unit Emps. Council 82, No. 99-CV-1021, 2001 WL 392089, at *3 (W.D.N.Y. Mar. 27, 2001) ("In short, plaintiff has presented no valid grounds for any Title VII claim and the undersigned, *sua sponte*, will dismiss such claims in their entirety.").

\*\*\*

IT HEREBY IS ORDERED, that Plaintiff's Motion for Recusal (Docket No. 14) is DENIED.

FURTHER, that ACS' and Colleen Mahoney's Motion to Dismiss (Docket No. 6) is GRANTED.

FURTHER, that the Complaint is dismissed, *sua sponte*, as against Tom Salada, Tom Wrinn, Stephanie Orefice, Donna Barlow, and Mike Gibas.

FURTHER, that ACS' and Colleen Mahoney's Motion to Strike (Docket No. 33) is DENIED as moot.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: March 6, 2012
      Buffalo, New York

                                /s/William M. Skretny
                              WILLIAM M. SKRETNY
                                  Chief Judge
                              United States District Court

---

[8] It appears that these defendants have not been served with a summons or complaint. In one of Plaintiff's sundry exhibits, she states that she does not intend to serve these defendants. (See Plaintiff's "Exhibit 40"; Docket No. 13-7.)